INTERSTATE COMMERCIAL BUILD-
ING SERVICES, INC., a Nevada
Corporation, Plaintiff,

v.

BANK OF AMERICA NATIONAL TRUST
AND SAVINGS ASSOCIATION, a Na-
tional Banking Association Defendant.

No. CV–S–96–00282–PMP (LRL).

United States District Court,
D. Nevada.

Oct. 16, 1998.

William Coulthard, Harrison, Kemp & Jones, Jennifer C. Popick, Randall Jones, Kirby R. Wells, Las Vegas, NV, for Interstate Commercial Building Services, Inc.

J. Stephen Peek, Las Vegas, NV, for Bank of America.

## ORDER

PRO, District Judge.

Presently before the court is Defendant Bank of America National Trust and Savings Association's ("Bank of America") Motion for Summary Judgment and/or Summary Adjudication of Claims and Issues (# 68) filed May 8, 1998. Plaintiff Interstate Commercial Building Services, Inc. ("ICBS") filed an Opposition to Defendant's Motion for Summary Judgment and/or Summary Adjudication of Claims and Issues (# 73) on May 26, 1998. On June 9, 1998, Defendant filed a Reply to Opposition to Defendant's Motion for Summary Judgment and/or Summary Adjudication of Claims and Issues (# 81). Defendant submitted an Errata to Reply to Opposition to Defendant's Motion for Summary Judgment and/or Summary Adjudication of Claims and Issues (# 83) on June 12, 1998. On October 6, 1998, the Court conducted a hearing regarding Bank of America's Motion for Summary Judgment.

## I. INTRODUCTION

Bank of America brings this motion for summary judgment and/or summary adjudication seeking dismissal of all legal and equitable claims brought by ICBS. These claims arose from Bank of America's alleged breach of construction contracts with ICBS. Bank of America contends that pursuant to Chapter 624 of the Nevada Revised Statutes, ICBS is barred from seeking relief due to its unlicensed contractor status. In addition, Bank of America seeks summary adjudication on issues relating to ICBS' claimed damages and Bank of America's alleged overpayment of ICBS in the amount of $180,652.89 under one of the contracts implicated in this action.

To resolve Bank of America's motion, the Court must determine: (1) whether ICBS' claims are ripe for summary judgment; (2) if so, what jurisdictional law this Court should apply; (3) whether Chapter 624 of the Neva-

da Revised Statutes bars ICBS' contract and equitable claims; (4) the admissibility of evidence supporting ICBS' defamation claim; and (5) the amount of monies overpaid to ICBS.

For the reasons that follow, Bank of America's Motion for Summary Judgment and/or Summary Adjudication is GRANTED.

## II. Factual Background

The underlying disputes arise from a trio of construction contracts entered between Bank of America and ICBS in 1995. On June 12, 1995, ICBS and Bank of America entered into the Guaranteed Maximum Price Design and Construction Master Agreement ("Master Agreement"). On June 14, 1995, the parties entered into the Project Addendum ("Addendum"), in which ICBS agreed to provide "service and on-call work" to Bank of America. To ensure the compliance of Bank of America's Nevada branch offices with the Americans with Disabilities Act, Bank of America also selected ICBS to provide disability compliance services under a separate agreement ("ADA Contract").

Pursuant to these contracts, ICBS performed construction services at Bank of America's branch offices in Nevada, Arizona, New Mexico, and Texas between June 12, 1995, and October 5, 1995. One month after the execution of the Master Agreement and the Addendum, a representative of Bank of America expressed his dissatisfaction with the management fee structure provided in the Master Agreement and his intention to use an alternative formula of compensation. Nevertheless, ICBS allegedly continued to provide construction services and incur expenses in accordance with the contracts.

In August and September of 1995, Bank of America began an internal investigation of one of its representatives, Jose M. Hernan-

dez, based on a tip regarding laundered kickback payments allegedly accepted by Hernandez from building contractors and subcontractors. According to Bank of America, this investigation revealed that Hernandez had accepted a $50,000 payment from Third–Party Defendant Robyn Parra, the president of ICBS, to improperly secure the construction contracts between ICBS and Bank of America.

In September 1995, Bank of America ordered a complete cessation of all work being performed under the contracts and an accounting of all funds advanced to ICBS by Bank of America. Although the record is somewhat unclear, it appears that payments to ICBS were also halted or delayed. Sometime during this period, ICBS alleges that Bank of America made defamatory statements regarding ICBS to ICBS' subcontractors. On October 6, 1995, ICBS closed all its operations on the Bank of America projects.

ICBS subsequently sued, bringing the following claims for relief: (1) breach of contract; (2) anticipatory repudiation; (3) unjust enrichment; (4) quantum meruit; (5) promissory estoppel; (6) defamation; and (7) tortious breach of the implied covenant of good faith and fair dealing. Bank of America counterclaimed, alleging: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) conversion; (5) intentional misrepresentation; (6) negligent misrepresentation; and (7) conspiracy to defraud. Bank of America also brought third-party claims against Hernandez and Parra, alleging, in part, that they defrauded Bank of America.

Now, Bank of America moves for summary adjudication of ICBS' legal and equitable claims on the grounds that ICBS is barred from recovery under Chapter 624 of the Nevada Revised Statutes.[1] Bank of America

---

1. Chapter 624 of the Nevada Revised Statutes regulates the conduct of construction or improvements by entities or persons.

Section 624.320 provides, in pertinent part, that: "No person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, engaged in the capacity of a contractor shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that such

person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, was a duly licensed contractor at all times during the performance of such act or contract and when the job was bid." Nev.Rev. Stat. § 624.320 (1997).

The legislature broadly construed the term "contractor." Section 624.020(2) states that: "[A] contractor is any person, except a registered architect or registered professional engineer, acting solely in his professional capacity, who in any capacity other than as the employee of an-

asserts that ICBS was acting as an unlicensed contractor at the time of contract formation and performance. Furthermore, Bank of America seeks dismissal of ICBS' defamation claim because of the alleged inadmissibility of certain hearsay evidence.

In addition to summary adjudication of all of ICBS' claims, Bank of America also seeks summary adjudication of a number of issues extant under ICBS' Complaint and Bank of America's Counterclaims. First, Bank of America seeks adjudication of the amount of monies unjustly retained and owed by ICBS under the ADA Contract. Second, Bank of America seeks adjudication of whether the Master Agreement and Addendum provided for an at-will or definite term contract and whether, as a result, ICBS can maintain a claim for lost profits. Third, Bank of America seeks adjudication of whether ICBS failed to mitigate its damages.

ICBS counters that summary judgment is premature. Even assuming *arguendo* that the claims are ripe for summary judgment, ICBS insists that its activities are not subject to the standing barrier of Chapter 624 since it functioned solely as a "fee manager" that directed payments to licensed contractors and subcontractors. Furthermore, ICBS argues that all construction was performed or arranged by its Nevada-licensed subsidiary or affiliate. ICBS contends that such actions remove it from the ambit of Chapter 624 of the Nevada Revised Statutes.

## III. Discussion

### A. Ripeness of ICBS' Claims for Summary Judgment

■ ICBS' contention of the prematurity of Bank of America's motion lacks both detail and persuasive force. To preserve the right to further discovery before a district court rules on a summary judgment motion, the litigant must request a continuance under Federal Rule of Civil Procedure 56(f). *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir.1987). A Rule 56(f) request must have an affidavit that (1) shows what evi-

dence is being sought, (2) delineates specific reasons why such evidence is presently unavailable, and (3) demonstrates how this evidence is reasonably expected to create triable issues. *VISA v. Bankcard Holders*, 784 F.2d 1472 (9th Cir.1986); William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 14:114.2 (1998). The party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed.Cir.1996) (quoting *S.E.C. v. Spence & Green Chem. Co.*, 612 F.2d 896 (5th Cir.1980), *cert. denied*, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981)).

■ Under these standards, ICBS' argument of prematurity fails. ICBS merely claims that the production of additional documents will be "essential to this case" and that the taking of further depositions "will reveal substantive facts in support of all of Plaintiff's claims." (Coulthard Aff. ¶ 9, Ex. 1, attached to Pl.'s Opp'n to Def.'s Mot.) While Rule 56(f) does not require clairvoyance, *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1292 (5th Cir.1994), ICBS has failed to meet the required minimum level of detail indicative of what further discovery would uncover. ICBS has also failed to explain how such new evidence would raise triable issues.

■ Moreover, it is within the Court's discretion to rule on motions for summary judgment after the parties have had a reasonable opportunity for discovery. *Simmons Oil Corp.*, 86 F.3d at 1144. The court does not abuse its discretion by denying further discovery under Rule 56(f) to a party that has failed to act diligently. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir.1996); *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir.1995). The case at bar was filed on February 22, 1996. The original discovery cutoff date of July 23, 1997, was extended until August 12, 1998, to accommodate various discovery disputes and the scheduling problems of the parties. ICBS has been

---

other with wages as the sole compensation, undertakes to, or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck, or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof." Nev.Rev.Stat. § 624.020(20) (1997).

given ample opportunity to conduct discovery. Thus, the Court holds that ICBS' request for further discovery must be rejected and that ICBS' claims are ripe for summary adjudication.

## B. Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1050 (9th Cir.1995). After drawing inferences in the light most favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims as a matter of law. *S.E.C. v. Seaboard Corp.,* 677 F.2d 1297, 1298 (9th Cir.1982).

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir.1982). The substantive law defines which facts are material. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact is more than some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only disputes over outcome determinative facts under the applicable substantive law will preclude the entry of summary judgment. *Id.* If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Metro Indus., Inc. v. Sammi Corp.,* 82 F.3d 839, 847 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. 2505. In meeting this burden, parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *Keenan v. Allan,* 91 F.3d 1275, 1278 (9th Cir.1996).

The Supreme Court cases cited above establish that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## C. Choice of Law

■ Where federal jurisdiction is invoked upon diversity of citizenship, a federal court is bound to apply the substantive law of the state in which it sits. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Strassberg v. New England Mut. Life Ins. Co.,* 575 F.2d 1262 (9th Cir.1978). In the absence of controlling Nevada law, a federal court sitting in diversity must use its own best judgment in predicting how the Nevada Supreme Court would decide the substantive issue. *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir.1986), *reh'g denied, modified,* 810 F.2d 1517 (1987); *Takahashi v. Loomis Armored Car Serv.,* 625 F.2d 314, 316 (9th Cir.1980). In performing that function, this Court may be aided by reviewing well-reasoned decisions from other jurisdictions. *Takahashi,* 625 F.2d at 316. Here, the Court's jurisdiction is based upon diversity. Thus, the Court will look to Nevada law or persuasive authority

from other jurisdictions to dispose of Bank of America's Motion for Summary Judgment.

### D. Summary Adjudication of ICBS' Claims on the Contract and in Equity

▋ Nevada follows the basic doctrine that "contracts made in contravention of the law do not create a right of action." *Vincent v. Santa Cruz*, 98 Nev. 338, 647 P.2d 379, 381 (1982); *see also Al–Ibrahim v. Edde*, 897 F.Supp. 620, 623 (D.D.C.1995) (interpreting Nevada law). In the absence of a duly-issued contractor's license from the state, a person or business entity is generally barred from bringing an action on the contract or for compensation for performance thereof. Nev.Rev.Stat. § 624.320 (1997). Here, both parties agree that at the time of the alleged contract breach, ICBS was not licensed as a contractor in the state of Nevada.[2] (Barber Aff., Ex. D, attached to Def.'s Mot.; Maxwell Aff. ¶¶ 8–9, Ex. 3, attached to Pl.'s Opp'n.) The parties disagree as to whether a contractor's license is required for relief under the contract and in equity, according to Nevada law.

To resolve this conflict, the Court must resolve the following questions: (1) did ICBS' acts render it a contractor under Nevada law and (2) if so, does ICBS qualify for any of the case law exceptions to Section 624.320 of the Nevada Revised Statutes?

#### 1. Contractor Status

▋ A "contractor" is held to be any person or entity who "purports to have the capacity to undertake to, or submits a bid to, or does himself or *by or through others*, construct, alter, repair, add to, subtract from, improve, move, wreck, or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement." Nev.Rev.Stat. § 624.020(2)(1997)(emphasis added). Thus, for example, obtaining building permits, the acceptance of subcontractor bids, the supervision of remodeling work, and the payment of sub-contractors from a general checking account constitute the work of a general con-

tractor. *Trident Constr. v. West Elec.*, 105 Nev. 423, 776 P.2d 1239, 1241–42 (1989).

Here, Bank of America has met its burden of establishing ICBS as a contractor for purposes of Chapter 624 of the Nevada Revised Statutes, by providing evidence that ICBS performed construction work "by or through" its subcontractors or affiliates. The Master Agreement provides that ICBS would have "responsibility for day-to-day administration, scheduling and budget control." (Master Agreement ¶ 1.2, Ex. A, attached to Def.'s Mot.) Robyn Parra, the chief executive officer of ICBS corporation, submitted a number of invoices for repair and maintenance work performed by subcontractors, after placing her authorization on a signature line that reads: "Approved by: Contractor." (Pl.'s Invoices, Exh. A, attached to Def.'s Reply.) Various subcontractors also sent invoices for repair and construction work performed on Bank of America's branch offices to ICBS. (Invoices, Exh. B, attached to Def.'s Reply.) Some of these invoices list ICBS as the "Customer." (Id.)

Seeking to avoid characterization as a contractor, ICBS presents evidence indicating that it did not personally provide construction services but instead had the contractual power to subcontract work to outside professionals. (Burrola Dep. Tr. at 42, Exh.2, attached to Pl.'s Opp'n.) ICBS also presents evidence indicating Bank of America knew that ICBS was not licensed as a contractor in the State of Nevada and was providing contracted services "by and through its (duly-licensed) affiliate McKenzie–Nall." (Maxwell Aff. ¶ 10, Exh.3)

▋ Viewing the foregoing facts in the light most favorable to ICBS, the Court finds that ICBS acted as a contractor during the disputed period of time as a matter of law. ICBS has failed to defeat Bank of America's contention that ICBS was fulfilling its contract obligations "by or through" others. ICBS has conceded that it was performing the contracted repair and construction work through the services of its alleged affiliate,

---

**2.** This Court notes Bank of America's request for judicial notice of ICBS' alleged aborted attempt to acquire a Nevada contractor's license. While a party may request judicial notice in connection

with a motion for summary judgment, it should prepare a separate formal pleading. William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 14:192 (1998).

McKenzie–Nall, and the various subcontractors it allegedly hired. Bank of America's alleged awareness of ICBS' unlicensed status and ICBS' subcontracting powers are irrelevant to the issue of contractor status due to ICBS' activities by proxy. Given the broad language of Section 624.020, McKenzie–Nall's possession of a Nevada contractor's license does not shield ICBS from the state licensing requirement. *See generally* Nev.Rev.Stat. § 624.330 (1997) (listing exemptions).

In deciding this issue, the Court rejects ICBS' assertion that summary adjudication of ICBS' contractor status is precluded by the Nevada case of *Briggs v. Zamalloa*, 83 Nev. 400, 432 P.2d 672 (1967). The *Briggs* case merely stands for the proposition that a trial court's finding of a person's status, based on substantial and competent evidence, should not disturbed by appellate review.

### 2. Effect of ICBS' Unlicensed Status on ICBS' Contract Claims

ICBS' contract claims may nevertheless survive summary judgment if: (a) ICBS has "substantially complied" with Chapter 624 or (b) the construction agreements call for only the minimal performance of activities that require a license (the "hybrid services" exception). After reviewing the proffered evidence, the Court finds that ICBS neither raises triable issues showing the applicability of these exceptions nor establishes these exceptions as a matter of law.

First, ICBS has failed to show that it has substantially complied with Chapter 624. Nevada follows the basic doctrine that "contracts made in contravention of the law do not create a right of action." *Vincent,* 647 P.2d at 381. In the absence of a state contractor's license, a person or business entity is generally precluded from bringing an action on a construction contract or for compensation for performance thereof. Nev. Rev.Stat. § 624.320 (1997). "The primary purpose of Nevada's licensing statutes is to protect the public against both faulty construction and financial irresponsibility." *MGM Grand Hotel v. Imperial Glass Co.,* 533 F.2d 486, 489 (9th Cir.1976).

Though Chapter 624 initially served as an absolute bar to contract claims brought by unlicensed contractors, *Magill v. Lewis,* 74 Nev. 381, 333 P.2d 717 (1958), subsequent cases carved a narrow exception for those who substantially complied with the licensing scheme. In *Nevada Equities v. Willard Pease Drilling Co.,* 84 Nev. 300, 440 P.2d 122 (1968), a drilling company that held a contractor's license for oil and gas well drilling and a second license for water well drilling was permitted to maintain a suit for the balance owed on a contract to drill for mineral water, even though it did not hold a specialty license from the State Contractor's Board. The *Nevada Equities* court held that the drilling contractor had "substantially complied" with the Nevada licensing scheme, since it possessed the general licenses and evinced no signs of financial or technical inadequacy. 440 P.2d at 123. Similarly, in *Day v. West Coast Holdings, Inc.,* 101 Nev. 260, 699 P.2d 1067 (1985), the court held that a landscaper subcontractor could enforce a contract with a general contractor, since the landscaper held a general contractor's license and had informed the general contractor that its application for a specialty license was pending.

In *MGM Grand Hotel,* the Ninth Circuit, while applying Nevada law, held that an owner, who had not been licensed as a contractor and had solely undertaken the financial responsibility of the building project, had nevertheless substantially complied with the Nevada licensing scheme. There, the court held that the owner's delegation of all day-to-day supervision of construction work to a licensed general contractor and its avoidance of any appearance of financial irresponsibility satisfied the Chapter 624 requirements. *MGM Grand Hotel,* 533 F.2d at 489–90.

Under the foregoing authorities, it is clear that ICBS did not sufficiently comply with the Nevada licensing scheme. Unlike the situations in *Nevada Equities* and *Day,* where the contractors only lacked additional specialty licenses, ICBS failed to acquire any license whatsoever. This failure prevented the State of Nevada from exercising its regulatory power over ICBS' operations and effectuating its consumer protection goals. *See* Nev.Rev.Stat. § 624.260 (1997) (contractor applicant to demonstrate experience, knowledge, and financial responsibility); *Ne-*

vada Equities, Inc., 440 P.2d at 123. In addition, unlike the claimant in the *MGM Grand Hotel* case, ICBS neither owned the constructed properties nor functioned as a passive financier. During oral argument, ICBS conceded that its activities as a "fee manager" were indistinguishable from those performed by a general contractor, viz., tasks such as the general management and delegation of construction and repair jobs. The mere use of licensed subcontractors or another licensed general contractor does not constitute substantial compliance with the licensing scheme. *See Ranchwood Communities Ltd. Partnership v. Jim Beat Const. Co.,* 49 Cal.App.4th 1397, 57 Cal.Rptr.2d 386 (Cal.Ct. App.1996). Accordingly, the Court finds that ICBS' use of McKenzie–Nall, the alleged licensed subsidiary, also fails to shield ICBS from the bar of Chapter 624. ICBS' actions, in sum, do not merit any immunity from the Nevada regulatory scheme.

■ Second, ICBS' reliance on a pair of California cases exempting unlicensed contractors under the so-called "hybrid services" exception is misplaced. In the case of *Executive Landscape v. San Vicente Country Villas,* 145 Cal.App.3d 496, 193 Cal.Rptr. 377 (1983), an appellate court distinguished between services provided under a construction contract for which a license was required under California law and services for which no license was required. The court reasoned that:

> "The purpose of the statute is hardly served when a person who is not required to have a contractor's license is denied legal redress solely because the form of the contract indicates the likelihood that some, perhaps minimal, services requiring a license may be performed under it. A contractual clause calling for hybrid services does not on its face render the contract unenforceable. The converse is also true. Unlicensed persons may not finesse the statute by drafting contracts calling solely for unlicensed services where in reality other services requiring a license will be performed."

*Executive Landscape,* 193 Cal.Rptr. at 380. The court emphasized that a judge should look at the substance rather than the form of the bargain to determine whether it mostly calls for licensed or unlicensed activities.

*Id.; see also Ranchwood Communities,* 57 Cal.Rptr.2d at 394.

This Court has found no authorities showing the adoption of the "hybrid services" distinction by Nevada courts. Even assuming *arguendo* the adoption of this doctrine, the Court finds that, after looking at the substance and realities of the situation, the construction contracts mostly called for services that required a license. By its own admission, ICBS provided numerous repair and construction services to Bank of America's branch offices, albeit through the services of its alleged subsidiary, McKenzie–Nall. Section 624.320 of the Nevada Revised Statutes and the *Executive Landscape* and *Ranchwood Communities* cases make no distinction between services provided by the claimant and services provided by the claimant's subcontractors or subsidiaries. As a result, the Court finds that most, if not all, services provided by or through ICBS required a contractor's license under Section 624.320. Moreover, contrary to ICBS' assertions, the *Executive Landscape* and the *Ranchwood Communities* cases do not permit pro-rata recovery equivalent to the quantum of services for which a license was not required. Instead, legal remedies must be permitted or denied *in toto. See Executive Landscape,* 193 Cal.Rptr. at 380. As a result, the Court finds the California "hybrid services" exception to be inapplicable to the case at bar.

### 3. Effect of ICBS' Unlicensed Status on ICBS' Equitable Claims

■ The viability of an unlicensed contractor's equitable claims is governed by two narrow exceptions: (a) the substantial compliance exception, as used in the disposition of contract claims, *Loomis v. Lange Fin. Corp.,* 109 Nev. 1121, 865 P.2d 1161, 1165 (1993), and (b) a four-factor test balancing test. *Magill,* 333 P.2d at 719 (court should weigh extent of contract completion, defendant's moral turpitude, defendant's moral fault compared to that of plaintiff, and possibility of unjust enrichment), *cited with approval in Shimrak v. Garcia–Mendoza,* 112 Nev. 246, 912 P.2d 822, 826 (1996); *Locken v. Locken,* 98 Nev. 369, 650 P.2d 803, 805 (1982); *Al–Ibrahim v. Edde,* 897 F.Supp.

620, 623 (D.D.C.1995). In cases of "blatant, substantial, and repeated" violations of Nevada law, neither exception will protect the equitable claims of unlicensed contractors. *Loomis,* 865 P.2d at 1165.

In *Loomis,* a corporation illegally sold real estate for a client without first obtaining the requisite state broker's license. Among other things, the corporation improperly engaged in real estate marketing, retained deposit earnest monies in violation of Nevada statutes, and breached its fiduciary duties to its principal. *Loomis,* 865 P.2d at 1162 and 1165. In view of the corporation's "blatant, substantial, and repeated" violations of the Nevada regulatory scheme and the breach of fiduciary duties, the court held that, notwithstanding the *Nevada Equities* and *Magill* exceptions, the corporation could not maintain its equitable claims. *Id.,* 864 P.2d at 1165.

 Bank of America presents considerable evidence of repeated, blatant violations of Nevada's construction and public safety laws. ICBS allegedly distributed business cards with false state contractor's license numbers. (Doc., Exh. F, attached to Def.'s Mot.) ICBS also allegedly made a $50,000 bribe to an employee of Bank of America to ensure the execution of the construction contracts and the issuance of work projects. (Docs., Exhs. G–H, attached to Def.'s Mot.; Parra Answers to Def.'s Interrogs., Exh. I, attached to Def.'s Mot.) Moreover, despite its claims of the use of a licensed subsidiary, ICBS has conceded that it did not obtain a contractor's license for any of the general contractor functions it performed by itself for Bank of America.[3] (Pl.'s Resps. to Def.'s Reqs. for Admis. to Pl., Exh. E at 2–3, attached to Def.'s Mot.)

In response to these allegations of misrepresentation and violations of the Nevada regulatory scheme, ICBS fails to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Instead, in its opposition, ICBS merely denies the allegations as "wild" and asserts, without factual support, that any extant wrongdoing flowed from Bank of America's "mismanagement and internal strife." (Pl.'s Opp. at 14.) Such bare denials and counter-allegations

within a nonmovant's pleadings are insufficient to raise genuine issues of material fact. *Gasaway v. Northwestern Mut. Life Ins. Co.,* 26 F.3d 957, 960 (9th Cir.1994); *accord British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 954 (9th Cir.1978) (supposition and conclusory argument of counsel cannot prevent summary judgment). The sole "fact" that ICBS presents is Bank of America's alleged awareness of ICBS' use of a licensed subsidiary in the provision of construction services. (Maxwell Aff. ¶¶ 8–9, Exh. 3.) Even viewing this averment in the light most favorable to ICBS, it does nothing to counter Bank of America's evidence of ICBS' repeated, blatant violations of the Nevada regulatory scheme. Accordingly, this Court finds that ICBS has failed to satisfy its burden of proof, under *Loomis,* in opposing these allegations and grants summary judgment barring ICBS' equitable claims. As the old maxim states, one who comes into equity must come with clean hands. *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).

**E. Summary Judgment of ICBS' Defamation Claim**

The Court also finds that ICBS' defamation claim fails to survive summary judgment. It is well established that only admissible evidence may be considered in a summary judgment motion. Fed.R.Civ.P. 56(e); *Local Motion Inc. v. Niescher,* 105 F.3d 1278, 1280 (9th Cir.1997). Here, ICBS cannot establish the existence and publication of the alleged defamatory statements because its supporting evidence constitutes inadmissible hearsay.

 In order to establish a prima facie case of defamation under Nevada law, ICBS must prove: (1) a false and defamatory statement by Bank of America concerning ICBS; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Simpson v. Mars Inc.,* 929 P.2d 966, 967 (Nev.1997). ICBS' proof of the first two elements constitutes hearsay within hearsay

---

**3.** During oral argument, ICBS conceded that the services it provided under the construction con-

tracts were indistinguishable from those provided by general contractors.

("double hearsay"): Bank of America representatives allegedly made statements to others who in turn repeated these statements to vendors and suppliers that, finally, reiterated such words to ICBS. In such double hearsay situations, each statement must qualify under some exception or exemption to the hearsay rules. *U.S. v. Arteaga,* 117 F.3d 388, 396, n. 12 (9th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 455, 139 L.Ed.2d 390 (1997). ICBS correctly points out that statements by Bank of America's agents or representatives would constitute non-hearsay, to wit, the statements of a party opponent. Fed.R.Evid. 802. However, ICBS fails to establish how the second level of hearsay would be overcome.

In some cases, this failure would not necessarily be fatal. The evidence submitted by the party opposing summary judgment must be merely of the type of testimony that can be reduced into admissible evidence. *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33, 37–38 (D.C.Cir.1987) (remand from U.S. Supreme Court; respondent's duty under Fed. R.Civ.P. 56(e) satisfied despite hearsay nature of letter, since witness could later be summoned at trial). Thus, in theory, ICBS could summon a hearsay witness and thereby reduce its evidence into admissible form. However, during oral argument, ICBS conceded that it would be unable to produce any such witnesses for the purpose of providing sworn testimony. Accordingly, this Court holds that the defamation claim cannot proceed because of ICBS' inability to present evidence of essential elements of its case (the utterance and publication of defamatory statements).[4]

### F. Summary Adjudication of the Issue of Monies Owed to Bank Under the ADA Contract

Bank of America also seeks summary adjudication of the amount of monies owed to it by ICBS under the ADA contract. Summary adjudication of an issue within a claim, such as liability or the amount of liability, is permissible under Federal Rule of Civil Procedure 56. *FTC v. Figgie Int'l, Inc.,* 994 F.2d 595, 601 (9th Cir.1993).

Here, Bank of America has presented evidence of the existence of a contract between ICBS and Bank of America for the performance of construction and maintenance work in compliance with the ADA Contract. (ADA Contract, Exh. C, attached to Def.'s Mot.) Bank of America has also presented evidence establishing the overpayment of ICBS in the amount of $180,652.89 for work that was allegedly never performed. (St. John Aff. ¶¶ 4–7, Exh. N, attached to Def.'s Mot.; Budget Comparison, Exh. O, attached to Def.'s Mot.) Such evidence, if uncontroverted, would entitle Bank of America to a directed verdict at trial. Unjust enrichment occurs whenever a person retains a benefit which in equity and good conscience belongs to another. *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975,* 113 Nev. 747, 942 P.2d 182, 187 (1997); *Unionamerica Mortgage v. McDonald,* 97 Nev. 210, 626 P.2d 1272, 1273 (1981). *See generally* 1 Dan B. Dobbs, *Law of Remedies* § 4.1(2)(2d ed.1993). In response, ICBS fails to offer any facts in opposition. As a result, the Court holds that Bank of America is entitled to the sum of $180,652.89 as a matter of law.

### G. Summary Adjudication of the Issues of Lost Profits and Mitigation of Damages

The Court need not consider the issues of lost profits and the mitigation of damages, as these issues have been rendered moot by the preclusion of ICBS' contract claims. Lost profits are generally a claim for consequential damages flowing from a contract breach. 3 Dan B. Dobbs, *Law of Remedies* § 12.4(3) (2d ed.1993). *See generally Dalton Properties, Inc. v. Jones,* 100 Nev. 422, 683 P.2d 30 (1984); *Covington Bros. v. Valley Plastering Inc.,* 93 Nev. 355, 566 P.2d 814 (1977). Similarly, the mitigation of damages doctrine outlines the "duty" of aggrieved parties to minimize their losses flowing from the defendant's breach of contract or tort. Restatement (Second) of Contracts § 350 (1981); *see, e.g. Lublin v. Weber,* 108 Nev. 452, 833 P.2d 1139 (1992); *Beales v. Hillhaven, Inc.,* 108 Nev. 96, 825 P.2d 212 (1992);

4. In its motion, Bank of America also raises the affirmative defense of truth against ICBS' defamation claim. However, the Court need not address this issue, given the fatal weaknesses of ICBS' claim.

*Conner v. Southern Nev. Paving Inc.,* 103 Nev. 353, 741 P.2d 800 (1987).

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendant Bank of America National Trust and Savings Association's Motion for Summary Judgment (# 68) is GRANTED as to Plaintiff Interstate Commercial Building Services, Inc.'s claims for breach of contract, anticipatory repudiation, promissory estoppel, and tortious breach of the implied covenant of good faith and fair dealing. This order renders moot Defendant Bank of America National Trust and Savings Association's Motion for Summary Judgment (# 68) on the issues of ICBS' lost profits and the mitigation of damages.

IT IS FURTHER ORDERED that Defendant Bank of America National Trust and Savings Association's Motion for Summary Judgment (# 68) is GRANTED as to Plaintiff Interstate Commercial Building Services, Inc.'s claims for unjust enrichment and quantum meruit.

IT IS FURTHER ORDERED that Defendant Bank Of America National Trust and Savings Association's Motion for Summary Judgment (# 68) is GRANTED as to Plaintiff Interstate Commercial Building Services, Inc.'s claim for defamation.

IT IS FURTHER ORDERED that Defendant Bank of America National Trust and Savings Association's Motion for Summary Judgment (# 68) is GRANTED in the amount of $180,652.89 owed by ICBS under the Americans with Disabilities Act Contract.

IT IS FURTHER ORDERED that the Clerk of Court shall forthwith enter Judgment in favor of Defendant Bank of America and against Plaintiff ICBS consistent with the above Orders.