UNIVERSITY AND COMMUNITY COLLEGE SYSTEM OF NEVADA, JANE NICHOLS, CHANCELLOR, THALIA M. DONDERO, HOWARD ROSENBERG, MARK ALDEN, JILL DERBY, DOROTHY GALLAGHER, DOUGLAS HILL, THOMAS E. KIRKPATRICK, DAVID L. PHILLIPS, DOUGLAS SEASTRAND, STEVE SISOLAK, AND TOM WIESNER, IN THEIR OFFICIAL CAPACITIES, APPELLANTS, v. DR PARTNERS, A NEVADA GENERAL PARTNERSHIP, DBA LAS VEGAS REVIEW JOURNAL, RESPONDENT.

No. 36984

March 9, 2001 18 P.3d 1042

*Thomas J. Ray,* General Counsel, and *Kwasi Nyamekye,* Associate General Counsel, University and Community College System of Nevada, Las Vegas; *Brooke Ann Nielsen,* Associate General Counsel, University and Community College System of Nevada, Reno, for Appellants.

*Campbell & Williams,* Las Vegas, for Respondent.

# OPINION

By the Court, ROSE, J.:

The question presented by this appeal is whether the office of community college president is a public office. A presidential search committee wants to interview applicants for the presidency in a closed meeting, but Nevada's open meeting law, NRS chapter 241, prohibits a public body from discussing a public officer's appointment in a closed session. The open meeting law does not define "public office" or "public officer," so the parties and the district court turned to the statutory definition provided in NRS chapter 281, which governs public officers and employees generally. NRS 281.005(1) defines "public officer" to include any person appointed to a position that (a) is established by state constitution or statute, or by charter or ordinance of a state political subdivision, and (b) involves the continuous exercise of a public power, trust or duty as part of regular and permanent government administration. The district court concluded that the community college president is a public officer under this definition.

We agree that NRS 281.005(1) may be used to define who is a public officer within the context of the open meeting law. Nevertheless, we conclude that the community college president is not a public officer because (1) the position was not created by law, but rather by Nevada's state university Board of Regents, and (2) the president does not regularly exercise sovereign governmental functions set by law, but only implements policies set by the Board of Regents. Therefore, the open meeting law does not prohibit closed applicant interviews.

## FACTS

The position of president of the Community College of Southern Nevada (CCSN) became vacant in January 2000. The Board of Regents formed a Presidential Search Committee, consisting of five Board members, to conduct a nationwide search and recommend to the Board a short list of qualified candidates for the position. The Committee narrowed the field to six applicants, scheduled interviews to be held during a joint meeting of the

Committee and the Board on September 28 and 29, 2000, and flew in the five out-of-state candidates.

In compliance with the open meeting law, the Committee published its agenda for the two-day joint meeting. The agenda noted that the Committee would hold a closed session to discuss "the character, alleged misconduct, professional competence, or physical or mental health of the applicants for the position of the CCSN President." The Committee planned to use the closed session to interview the six applicants. According to the agenda, the Committee would then return to open session to discuss the applicants, select finalists and schedule further activities for the finalists.

On September 27, 2000, DR Partners, a Nevada general partnership doing business as the Las Vegas Review Journal (the Newspaper), filed a complaint for emergency injunctive and declaratory relief, challenging the legality of the scheduled closed-door interview session. The Newspaper's complaint, which named as defendants the University and Community College System of Nevada (UCCSN) and the chancellor and eleven regents in their official capacities (collectively, the University), alleged that the Committee could not close the interview session because NRS 241.030(3)(e) prohibits a closed meeting for the discussion of the appointment of any person to public office, and the position of CCSN president is a public office. The complaint noted that the open meeting law does not define "public office," but the Attorney General in the Nevada Open Meeting Law Manual has opined that "NRS 241.030(3)(e) encompasses: (1) all elected public officers; and (2) all persons appointed to positions created by law whose duties are specifically set forth in law and who are made responsible by law for the direction, supervision and control of their agencies."[1]

With its complaint, the Newspaper also sought a temporary restraining order and preliminary injunction to stop the Committee from holding the closed-door session set for the next morning. The district court heard the parties' arguments in chambers, granted the application for a temporary restraining order and set the injunctive relief motion for hearing on September 29, 2000. On September 28, 2000, the University filed an opposition to the preliminary injunction application, arguing that the community college president is not a "public officer" as defined by NRS 281.005(1). That same day, the Newspaper filed a supplemental memorandum in support of its application for a preliminary injunction, arguing that the community college president is a "public officer" as defined by NRS 281.005(1).

---

[1] Frankie Sue Del Papa, *Nevada Open Meeting Law Manual* § 9.05, at 55 (7th ed. 1998) (citing 75-193 Op. Att'y Gen. (1975)).

During the hearing on September 29, 2000, the parties and the court applied the definition of "public officer" provided by NRS 281.005(1):

"public officer" means a person elected or appointed to a position which:

(a) Is established by the constitution or a statute of this state, or by a charter or ordinance of a political subdivision of this state; and

(b) Involves the continuous exercise, as part of the regular and permanent administration of the government, of a public power, trust or duty.

The parties and the court acknowledged during the hearing that this definition is statutorily limited to chapter 281, but they did not consider any other statutory or dictionary definitions of "public office" or "public officer." They also did not discuss the Attorney General's opinion that NRS 241.030(3)(e) encompasses persons appointed to positions created by law, whose duties are set by law and who are held legally responsible for the direction, supervision, and control of their agencies. The parties and the court primarily discussed whether the bylaws establishing the position of community college president are sufficiently analogous to a political subdivision's charter to satisfy the first part of the statutory definition, and reviewed and discussed case law interpreting the criteria contained in the second part of the definition.

Ultimately, the district court decided that "the delegation of authority, public power, trust, and duties evidenced in the Nevada Statutes and the [University] System's governing documents render the President of CCSN a public officer." The district court granted a preliminary and permanent injunction prohibiting the Committee from holding a closed session to discuss "the character, alleged misconduct, professional competence, or physical or mental health of the Applicants for the position of the CCSN President." The applicants returned to their homes without being interviewed.

The University appeals.

## STANDARD OF REVIEW

There are no disputed facts; the district court granted the preliminary and permanent injunction based on its interpretation of NRS 241.030(3)(e) and NRS 281.005(1). The interpretation of a statute is a question of law, which we review de novo.[2]

## DISCUSSION

The state open meeting law, NRS chapter 241, requires all meetings of public bodies to be open and public, except as other-

---

[2]*See, e.g., Maxwell v. SIIS,* 109 Nev. 327, 329, 849 P.2d 267, 269 (1993).

wise provided by specific statute.[3] NRS 241.030, which contains exceptions to the general open meeting requirement, provides in pertinent part:

1. . . . nothing contained in this chapter prevents a public body from holding a closed meeting to consider the character, alleged misconduct, professional competence, or physical or mental health of a person.

. . . .

3. This chapter does not:

. . . .

(e) Permit a closed meeting for the discussion of the appointment of any person to public office or as a member of a public body.

These provisions seem to conflict in situations like the present one, when a public body would like to consider sensitive matters concerning job applicants in private even though they intend to make their final selection in public; however, in 1989 we harmonized these two sections in *City Council of Reno v. Reno Newspapers*.[4] In that case, we construed the statute to permit closed meetings for the purposes specified in subsection (1) except when there is any discussion about appointment of a public officer, in which case subsection (3)(e) strictly prohibits closure of the meeting.[5] The parties agree that if the community college president is a public officer, the Committee's proposed closed-door session would violate the open meeting law.

In this case, as in *City Council of Reno,* the parties used the NRS 281.005(1) statutory definition of public officer to resolve the issue because NRS chapter 241 does not define ''public office'' or ''public officer.'' The first question before us, therefore, is whether NRS 281.005(1) defines who is a ''public officer'' within the context of the open meeting law. We conclude that it does.

*Applicability of NRS 281.005(1) to NRS chapter 241*

The Legislature enacted the general open meeting law, codified as NRS chapter 241, in 1960.[6] A provision of the original law, codified as NRS 241.030, specified that nothing in it was to be construed to prevent closed executive sessions ''to consider the appointment, employment or dismissal of a public officer or

---

[3]NRS 241.020(1).

[4]105 Nev. 886, 784 P.2d 974 (1989).

[5]*Id.* at 892, 784 P.2d at 978.

[6]1960 Nev. Stat., ch. 23, at 25.

employee or to hear complaints or charges brought against such officer or employee,'' unless the officer or employee requested a public hearing.[7] The Act did not define ''public officer.''

This court had by then, however, considered the nature of a public office and the criteria that distinguished a public officer from an employee. In *State ex rel. Mathews v. Murray,*[8] we noted that there was a considerable body of authority on the subject, with many criteria used in the analysis, but that the authorities uniformly appeared to agree upon one point: ''A public office is distinguishable from other forms of employment in that its holder has by the sovereign been invested with some portion of the sovereign functions of government.'' We also noted that the court had previously, in defining a public office, quoted a treatise as follows:

> ''The right, authority and duty conferred by law by which, for a given period, either fixed by law or through the pleasure of the creating power of government, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The warrant to exercise powers is conferred, not by contract, but by law.''[9]

We then held that the director of the Public Service Commission Drivers License Division was not a public officer because the position was created by the agency administrator and not by law, and his duties also were specified by the administrator and not by law.[10]

Before *Mathews,* we had considered the nature of a public office in *State ex rel. Kendall v. Cole.*[11] The *Kendall* opinion gathered many additional definitions of public office and public officer from a wide variety of authorities. We noted in *Kendall* that a great many courts had held that to be a public officer one must be charged by law with duties involving an exercise of some part of the sovereign power of the state.[12] After considering the authorities and their many definitions, we held that the position occupied by the superintendent of Nevada exhibits at the Panama-Pacific exposition was not a public office. We stated:

---

[7]*Id.* § 4, at 25-26.

[8]70 Nev. 116, 120-21, 258 P.2d 982, 984 (1953).

[9]*Id.* at 121, 258 P.2d at 984 (quoting *State ex rel. Kendall v. Cole,* 38 Nev. 215, 221, 148 P. 551, 552 (1915) (quoting Bruce Wyman, *The Principles of the Administrative Law Governing the Relations of Public Officers* § 44 (1903))).

[10]*Id.* at 123, 258 P.2d at 985.

[11]38 Nev. 215, 148 P. 551 (1915).

[12]*Id.* at 224, 148 P. at 553.

None of the sovereign power of the state is intrusted to him. His compensation, period of employment, and the details of his duties, are all matters of contract with the board of directors. For, while the act says the board may "employ superintendents, directors, clerks, and other persons" for the purpose of carrying out the provisions of the act, "and for the further purpose of cooperating and advising with the exposition commissioner," it is apparent that the board had the authority to contract as to what the specific duty of each employee should be, otherwise there would be a corps of advisers, and none to execute.[13]

To these judicial definitions of "public office" and "public officer," which were controlling when the open meeting law was adopted, the Legislature added a new definition. In 1967 the Legislature enacted NRS 281.005(1), defining "public officer" as the term is used in NRS chapter 281, which contains general provisions applicable to public officers and employees.[14]

The Legislature's statutory definition of a "public officer" incorporates the fundamental criteria we applied in *Mathews* and *Kendall,* and is in harmony with those cases, as we subsequently confirmed in *Mullen v. Clark County.*[15] NRS 281.005(1)(a), which specifies that the position must be established by state constitution or statute, or by a charter or ordinance of a political subdivision of the state, encompasses the fundamental principle that a public office is created by law. NRS 281.005(1)(b), which specifies that the position must involve the continuous exercise of a public power, trust or duty, and that this exercise of public responsibility must be part of regular and permanent government administration, encompasses the fundamental principle that a public officer's duties are fixed by law and involve an exercise of the state's sovereign power.

Thus, because NRS 281.005(1) is in harmony with the judicial definitions used in contexts broader than NRS chapter 281, we conclude that it may generally be used to determine who is a "public officer," absent a stated legislative preference for the use of some other definition in a particular context.

Having concluded that NRS 281.005(1) applies, we next must decide whether the community college president is a "public officer" within this definition. As noted, the definition has two parts. The first part, NRS 281.005(1)(a), specifies that the position must

---

[13]*Id.* at 232-33, 148 P. at 556.

[14]1967 Nev. Stat., ch. 523, § 444, at 1471.

[15]89 Nev. 308, 311, 511 P.2d 1036, 1037 (1973).

be created by state constitution or statute, or by a charter or ordinance of a political subdivision of the state. The second part, NRS 281.005(1)(b), specifies that the position must involve the continuous exercise of a public power, trust or duty, and that this exercise of public responsibility must be part of regular and permanent government administration. We will address these two subsections separately.

*NRS 281.005(1)(a)*

The University contends that the community college president is not a public officer under the first section of the statute because the position was not created by state constitution or statute, or by a charter or ordinance of a political subdivision of the state, but rather by the Board of Regents in its bylaws.

The Newspaper argued to the district court that the presidents are public officers under this section because (1) a state statute, NRS 396.230, provides that "[t]he board of regents shall prescribe the duties of the chancellor and such other officers of the system as the board deems appropriate[,]" (2) UCCSN is a political subdivision of the state, and (3) its governing documents (UCCSN Code, Bylaws of the Board of Regents and College Bylaws) are tantamount to a charter. In its brief to this court, the Newspaper argues for the first time that the governing documents have the force and effect of a statute,[16] and because they contain provisions establishing the community college president as a University officer, the position is essentially a public office established by a state statute.

The Newspaper's arguments are not persuasive. First, with respect to its district court argument, the Newspaper does not explain how NRS 396.230 establishes any public office. Certainly, the statute does not do so explicitly.[17] Instead, the statute is but one of several enacted by the Legislature in compliance with its constitutional mandate to prescribe and define the Board's duties. Similar statutes are NRS 396.110, which directs the Board to pre-

---

[16]*See State ex rel. Richardson v. Board of Regents,* 70 Nev. 144, 150, 261 P.2d 515, 518 (1953) (holding Board cannot ignore the rules it adopts under the delegation of authority to prescribe rules for its governance and the governance of the university because such rules have "the force and effect of statute"); *see also Board of Regents v. Oakley,* 97 Nev. 605, 608, 637 P.2d 1199, 1201 (1981) (acknowledging that the *Richardson* court had concluded "that a provision of the University of Nevada System Code has the force of law," but noting the effect of the conclusion was to bind the Board to regulations it had previously established).

[17]*Compare* NRS 396.230, which directs the Board to "prescribe the duties of the chancellor and such other officers of the system as the board deems appropriate," *with* NRS 396.210(1), which directs the Board to "appoint a chancellor of the system" after consultation with the faculty.

scribe rules for its own government and for the government of the system; NRS 396.300, which directs the Board to prescribe rules for reports of officers and teachers; and NRS 396.380, which designates the Board members as sole trustees to receive and disburse the system's money and directs the Board to control all expenditures. While the position of chancellor was created by a statute,[18] the position of community college president was created not by any statute, but administratively by the Board, and the Board can as easily abolish the position or substitute another for it.

The Newspaper's new argument that the position was created by the equivalent of a state statute, because the Board's rules and regulations have the force and effect of statute or law, lacks merit. The cases cited by the Newspaper as support for this new argument, *State ex rel. Richardson v. Board of Regents,*[19] and *Board of Regents v. Oakley,*[20] do not support it. They make it clear that the Board is bound by the regulations it adopts under a statutory delegation of authority, but *Oakley* expressly rejects an intimation that the Board's own regulations are equal in status and dignity to legislative enactments (in other words, statutes).[21]

Second, the Newspaper does not explain how UCCSN qualifies as a political subdivision of the state with the authority to establish a public office by charter or ordinance. The Newspaper cites two opinions of the Attorney General in support of its assertion that UCCSN is such an entity. One of those opinions states that the "University of Nevada is a State-owned institution . . . and it is a department of the State for educational purposes deemed governmental in character."[22] The other opinion states that the University of Nevada is a public corporate body, "a legal entity or body politic created by law," whose "purposes can only be carried forward by its activity in a corporate capacity."[23] Opinions of the Attorney General are not binding legal authority in any event,[24] but these two opinions do not even support the Newspaper's assertion. Neither state-owned institutions, nor state

---

[18]NRS 396.210.

[19]70 Nev. 144, 261 P.2d 515 (1953).

[20]97 Nev. 605, 637 P.2d 1199 (1981).

[21]*See Oakley,* 97 Nev. at 608, 637 P.2d at 1201; *Richardson,* 70 Nev. at 150, 261 P.2d at 518.

[22]49-806 Op. Att'y Gen. 276 (1949) (discussing the University's potential liability for injuries sustained by students or visitors).

[23]55-29 Op. Att'y Gen. 102, 103 (1955) (discussing the use of the University's corporate name by another educational corporation).

[24]*See Goldman v. Bryan,* 106 Nev. 30, 42, 787 P.2d 372, 380 (1990).

departments, nor public corporations are synonymous with political subdivisions of the state.[25]

A public office is created by law, and laws are created by governments. As *Kendall* succinctly put it nearly a century ago:

> An office does not spring into existence spontaneously. It is brought into existence, either under the terms of the constitution, by legislative enactment, or by some municipal body, pursuant to authority delegated to it. ''All public offices must originally have been created by the sovereign as the foundation of government.''[26]

NRS 281.005(1)(a) incorporates this concept by specifying that a public officer holds a position established by state constitution or statute, or by a political subdivision's charter or ordinance. The statute simply identifies different kinds of laws, which are enacted by different governmental bodies. It seems plain that political subdivisions within the meaning of NRS 281.005(1)(a) are local government entities such as counties or cities or towns. This interpretation of the phrase fits best with the statute's use of the terms ''constitution,'' ''statute,'' ''charter'' and ''ordinance,'' which are the laws enacted by state and local government entities for their own government.[27]

Third, because UCCSN is not a political subdivision within the meaning of NRS 281.005(1), it is irrelevant that UCCSN's governing documents could constitute a ''charter.'' The only kind of charter the statute is concerned with is that of a political subdivision of the state.

The Newspaper has not established that the position of community college president meets the first statutory requisite of a public officer: namely, that the position was created by state constitution or statute, or by a charter or ordinance of a political subdivision of the state (in other words, by law). Although our analysis could end here, we take this opportunity to also consider whether the position of community college president meets the remaining statutory requisites of a public officer: namely, that the

---

[25]There are two statutes that define the Board and the University as political subdivisions, but the Newspaper has not cited them, and we see no reason to apply them outside the specialized context of securities law. For purposes of the University Securities Law (NRS 396.809 through 396.885), NRS 396.813 defines the Board of Regents as ''a political subdivision of this state,'' and NRS 396.838 defines the state university as ''a political subdivision of this state.''

[26]38 Nev. at 219, 148 P. at 552 (quoting 3 Cruise's Dig. p. 109, § 5).

[27]*See, e.g.,* Nev. Const. art. 8, § 8, which allows cities and towns to frame, adopt and amend charters for their own government, and NRS chapter 267, which provides that an incorporated city may frame and adopt a charter implementing a commission form of government.

position involves "the continuous exercise, as part of the regular and permanent administration of the government, of a public power, trust or duty[,]" as required by NRS 281.005(1)(b).

## NRS 281.005(1)(b)

The University contends that the community college president is not a public officer under the second section of the statute because the president is wholly subordinate to the Board of Regents and the chancellor, does not formulate policies but must implement the Board's policies, and can spend public money only according to a budget set by the Board. In addition, the president's duties are established by the Board, and not by law. In other words, the president has not been entrusted by law with any of the sovereign functions of the government.

The Newspaper asserts that the mere fact that a position is subordinate does not mean it cannot be a public office and cites as an obvious example the chancellor, who is subordinate to the Board and who the University concedes is a public officer. The Newspaper contends that the community college president does satisfy this section because the president, as chief administrative officer of CCSN, oversees a $65 million budget, can hire and fire personnel, and is responsible for 35,000 students and faculty members. In addition, NRS 396.323(1) gives "the presidents of all the branches," as well as the Board and the chancellor, the power to issue subpoenas, and the Newspaper asserts that this is a public power. The Newspaper contends that these important functions all make the president a public officer within the meaning of NRS 281.005(1)(b).

Again, the Newspaper's arguments are not persuasive. The community college president holds an important position, but the sovereign functions of higher education repose in the Board of Regents, and to a lesser degree in the chancellor, and not at all in the community college president. The Board has been entrusted by the constitution with the control and management of the University,[28] and the Board's duties, including the duties of appointing a chancellor, setting the chancellor's salary and prescribing the chancellor's duties, have been established by the Legislature.[29] The Board was not required by either the constitution or the Legislature to establish the position of community college president; the Board was free to adopt whatever structure it deemed appropriate to carry out its duties in managing and controlling the University, and it remains free to change that structure. In other words, the Board remains responsible to the public

[28]Nev. Const. art. 11, §§ 4 and 7.

[29]NRS 396.210; NRS 396.220; NRS 396.230.

for duties established by law, and the community college president is only responsible to the Board for duties established by the Board.

Because the president is wholly subordinate and responsible to the Board, and can only implement policies established by the Board, we conclude that the community college president does not meet the statutory requisites of a public officer set forth in NRS 281.005(1)(b). Although the position is imbued with the public power to issue subpoenas, the exercise of that power is not continuous, and it is not part of regular and permanent government administration; instead, the community college president's subpoena power is limited to disciplinary matters within the university system.

Finally, the Newspaper has requested that we award it fees and costs under NRS 241.037(2) if we affirm the district court's decision. We deny the request. Apart from the fact that we are reversing the district court's decision, we note that the Newspaper did not invoke the statute in the district court. While the statute grants the district court authority to award fees and costs, the Newspaper cites no authority for such an award by this court.

## CONCLUSION

We conclude that NRS 281.005(1) is properly used to determine who is a public officer for purposes of the open meeting law. Adherence to this definition should provide reasonable certainty in deciding which provisions of the open meeting law apply in a particular situation.

We further conclude that the office of community college president is not a "public office." The position was not created by law, and it has not been charged by law with duties involving an exercise of the state's sovereign power. Therefore, the Committee is not prohibited from interviewing applicants for the position in a closed session. Accordingly, we reverse the district court's order.

SHEARING, AGOSTI and BECKER, JJ., concur.

MAUPIN, C. J., with whom YOUNG and LEAVITT, JJ., join, dissenting:

I agree that NRS 281.005(1) defines who is a public officer within the context of the open meeting law; however, I believe that the community college president satisfies the statutory criteria.

Under NRS 281.005(1), the community college president is a "public officer" if the position:

> (a) Is established by the constitution or a statute of this state, or by a charter or ordinance of a political subdivision of this state; and

(b) Involves the continuous exercise, as part of the regular and permanent administration of the government, of a public power, trust or duty.

*NRS 281.005(1)(a)*

In my opinion, the University system and its governing Board comprise a political subdivision of the state. Indeed, the majority concedes that they have been so-defined by the Legislature, in NRS chapter 396, which governs the state's institutions of higher education.[1] The Board's governing documents, including the bylaws that establish the position of community college president and prescribe its duties, are the laws under which the University system operates. These documents serve the same purpose as a municipal body's charter, and I consider them to be sufficiently analogous to conclude that the position at issue meets the first statutory requisite of a public officer: the community college presidency was established by law.

*NRS 281.005(1)(b)*

In my opinion, the position also meets the remaining statutory requisites of a public officer; the community college president has been entrusted by law with a significant part of the state's sovereign functions of higher education. As the majority acknowledges, the president of CCSN oversees a $65 million budget, hires and fires personnel, supervises 35,000 students and faculty members, and issues subpoenas in disciplinary proceedings instituted to enforce the University system's laws. In other words, the position involves the continuous exercise of a public power, trust or duty, and this exercise of public responsibility is part of regular and permanent government administration.

I believe that this interpretation of NRS 281.005(1) is reasonable, and that it promotes the legislative purpose underlying the open meeting law: namely, that public bodies deliberate openly and act openly.[2] Because the community college president is a public officer, the Committee should be prohibited from holding a closed session to interview candidates for possible appointment to this public office. Thus, I would affirm the district court's order.

---

[1]NRS 396.838 (defining "University" as "the University and Community College System of Nevada, . . . a political subdivision of this state"); NRS 396.813 (defining "Board" as the board of regents, and stating that it "is a political subdivision of this state").

[2]NRS 241.010; *McKay v. Bd. of Supervisors,* 102 Nev. 644, 651, 730 P.2d 438, 443 (1986).