**132 Nev., Advance Opinion 15**

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| TIMOTHY TOM, AN INDIVIDUAL, Appellant, vs. INNOVATIVE HOME SYSTEMS, LLC, A NEVADA LIMITED LIABILITY COMPANY, Respondent. | No. 65419 |
| TIMOTHY TOM, AN INDIVIDUAL, Appellant, vs. INNOVATIVE HOME SYSTEMS, LLC, A NEVADA LIMITED LIABILITY COMPANY, Respondent. | No. 66006 |

**FILED**

MAR 10 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Consolidated appeals from a district court summary judgment in a mechanic's lien action and a post-judgment order awarding attorney fees and costs. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

*Reversed in part, vacated in part, and remanded.*

Pezzillo Lloyd and Brian J. Pezzillo, Jennifer R. Lloyd, Marisa L. Maskas, and George E. Robinson, Las Vegas,
for Appellant.

Snell & Wilmer, LLP, and Leon F. Mead II, Las Vegas,
for Respondent.

16-900279

BEFORE GIBBONS, C.J., TAO and SILVER, JJ.

*OPINION*

By the Court, GIBBONS, C.J.:

This case involves the foreclosure of a mechanic's lien and a breach of contract claim relating to work performed on a residence. At issue here is whether the district court properly granted summary judgment on both claims based on its conclusion that respondent Innovative Home Systems, LLC (IHS) did not need a license to perform the work it bid and completed on appellant Timothy Tom's residence. We also address the district court's award of attorney fees.

Pursuant to NRS 108.222(2), a contractor must be duly licensed to have an enforceable mechanic's lien for work it performed. In addition, NRS 624.320 precludes an unlicensed contractor from bringing or maintaining an action for the collection of compensation on a contract for which a license is required. In applying these statutes to the facts of this case, we conclude that genuine issues of material fact remain regarding whether IHS's work on Tom's residence required a license and whether IHS completed the contract in a workmanlike manner, thereby possibly negating Tom's obligation to make final payment under the contract. Accordingly, the district court erred in granting summary judgment on these issues. We therefore reverse the district court's order granting summary judgment, vacate the award of attorney fees, and remand this matter to the district court for further action consistent with this opinion.

*BACKGROUND*

Tom and IHS entered into a contract in April 2012, in which IHS agreed to install automation, sound, surveillance, and landscaping

systems in Tom's residence. IHS began work on the residence soon thereafter. It is undisputed that IHS did not have an electrical contractor's license when it bid the contract and began the work. In September 2012, IHS applied for, and received, an electrical contractor's license, which IHS contends was needed for other projects it would be working on, but not for the work on Tom's residence. IHS continued working on the Tom residence until December 2012. At that time, the parties disagreed on the performance of the contract, Tom refused to tender further payment to IHS, and IHS consequently filed a notice of lien against Tom's residence.

In response, Tom filed a consumer complaint with the Nevada State Contractors' Board (the Board), a state administrative agency, alleging that (1) IHS did not complete certain parts of the contract in a workmanlike manner and (2) IHS bid the job and performed the work without first obtaining the required electrical license. In response to the first allegation, an investigator for the Board investigated the matter and sent IHS a notice to correct, which required IHS to correct nine of the items listed in the complaint.

The investigator also requested a response to Tom's complaint from IHS. IHS responded with a letter claiming, among other things, that it did not need a license to complete the work on Tom's residence. IHS further stated that "[o]n occasion, . . . some low voltage wire needs to be pulled through previously constructed walls for aesthetic purposes to allow the systems to operate." IHS went on to explain that, "because of occasional overlap between such activities for which a license may arguably be required and those for which an exemption may apply, IHS made the conscious decision to obtain a C-2D low voltage license." IHS

claimed the overlap would possibly occur in future jobs, but not in this case.

After IHS purportedly remedied the work items identified by the investigator, the Board closed the case as resolved through a letter signed by a compliance supervisor. The Board neither conducted an adversary proceeding to determine the legal rights of the parties, nor issued a written decision specifically ruling on the license issue.

IHS then filed a complaint in district court against Tom alleging breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, foreclosure of notice of lien, and declaratory relief. IHS also requested attorney fees. After an initial round of dispositive motions by both parties were denied without prejudice, IHS filed a renewed motion for summary judgment on its claims, again arguing that an electrical license was not required for the work performed on Tom's residence and that its lien was proper and perfected. In support of this position, IHS's renewed motion cited three advisory opinions written by the licensing administrator on behalf of the executive officer of the Board addressing licensing requirements in the context of work performed by other contractors. IHS also provided additional support for its positions that IHS's work either did not require a license or fell within an exemption to the licensing requirement. After a hearing, the district court granted summary judgment in favor of IHS on the claims of breach of contract, breach of the covenant of good faith and fair dealing, foreclosure upon the notice and claim of lien, and declaratory relief.[1]

_____

[1]The Honorable James Brennan heard the initial dispositive motions filed by IHS and Tom. The Honorable Adriana Escobar heard and granted IHS's renewed motion for summary judgment.

Since the court found a valid contract existed, it denied IHS's unjust enrichment claim; however, it stated that, if the contract had been deemed unenforceable, it would have granted summary judgment to IHS for unjust enrichment. Even though discovery had not yet commenced, the court also denied Tom's motion for discovery pursuant to NRCP 56(f), stating that he failed to demonstrate that any discovery would lead to admissible evidence that would create a genuine issue of material fact. The district court did not rule on IHS's alternative theory of exemption.

The district court relied on two aspects of the Board's actions in determining that IHS did not need a license. First, the court concluded that if IHS needed a license to perform the work on Tom's residence, the Board was required, pursuant to NRS 624.212(1), to order IHS to cease and desist its work upon learning IHS was operating without a license. Because it did not do so and instead closed Tom's complaint, the district court determined that the Board "necessarily found that a license was not necessary" for the work IHS performed. Second, the court relied on the Board's advisory opinions, which determined that no license was needed when answering licensing questions regarding work on unrelated matters and concluded that those opinions were persuasive authority. Based on these conclusions, the district court awarded IHS the full lien amount of $23,674.67 and ordered the residence sold to satisfy payment of the lien and the impending attorney fees and costs. Tom subsequently appealed this determination, which is pending before this court in Docket No. 65419.

Thereafter, the district court filed an order awarding IHS $1,144.37 in costs and $35,350.00 in attorney fees pursuant to NRS 18.010(2)(b) and NRS 108.237(1)—an amount less than IHS requested.

Tom then appealed the order awarding IHS its attorney fees and costs, which is before us in Docket No. 66006, and his two appeals were subsequently consolidated.

## ANALYSIS

Throughout the proceedings before the Board, in the district court action, and now before this court, Tom has steadfastly maintained that IHS was required to have an electrical license in order to bid on and perform the work on his residence. And this position lies at the heart of Tom's argument that, without the required license, IHS cannot enforce its mechanic's lien or maintain an action against him to collect compensation on the parties' contract. In response to these assertions, IHS contends that it did not need an electrical license to perform the work or alternatively, that the work it performed was exempt from the license requirement.

Tom also argues that the district court erred in basing its decision to grant summary judgment on the licensing issue on the Board's resolution of Tom's administrative complaint and the Board's advisory opinions. He further asserts that genuine issues of material fact remain regarding whether IHS completed its obligations under the contract, thus precluding summary judgment on that issue. And because he claims summary judgment was improper, Tom argues that the award of attorney fees to IHS was also improper. IHS contends that there were no genuine issues of material fact remaining and therefore, granting judgment as a matter of law in its favor was appropriate, as was the award of attorney fees.

We review a district court's grant of summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029

COURT OF APPEALS
OF
NEVADA

(O) 1947B

(2005). A district court's award of attorney fees is reviewed for an abuse of discretion. *Kahn v. Morse & Mowbray*, 121 Nev. 464, 479, 117 P.3d 227, 238 (2005).

Before addressing the parties' specific arguments regarding the district court rulings at issue here, we first provide a brief discussion of Nevada's licensing scheme. A general understanding of this scheme and the statutes involved in this case will provide necessary background, as well as a starting point, for considering the issues presented on appeal.

*Nevada's licensing laws*

"The primary purpose of Nevada's licensing statutes is to protect the public against both faulty construction and financial irresponsibility." *MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 489 (9th Cir. 1976) (relying in part on *Nev. Equities, Inc. v. Willard Pease Drilling Co.*, 84 Nev. 300, 303, 440 P.2d 122, 123 (1968)). Licensing statutes allow Nevada to "exercis[e] its regulatory power over [contractors'] operations and effectuat[e] its consumer protection goals." *Interstate Commercial Bldg. Servs., Inc. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 23 F. Supp. 2d 1166, 1173 (D. Nev. 1998) (citing NRS 624.260(1) (1997)[2] (requiring applicants "to show such a degree of experience, financial responsibility and such general knowledge . . . [as is] necessary for the safety and protection of the public" in order to obtain a contractor's license)). Thus, to protect consumers, NRS 624.320 serves as an absolute bar on the recovery of contract claims brought by unlicensed contractors or

_____

[2]While this statute has subsequently been amended, the subsection relied on by the federal district court in *Interstate Commercial* did not change. *See* 2015 Nev. Stat., ch. 359, § 2, at 2005.

contractors not properly licensed for the duration of work requiring such a license. *See Magill v. Lewis*, 74 Nev. 381, 384, 387, 333 P.2d 717, 718-19, 720 (1958) (recognizing that NRS 624.320 essentially nullifies contracts with unlicensed contractors). Further, under NRS 108.222(2), unlicensed contractors are also unable to obtain an enforceable lien against the subject property.

Under this statutory scheme, anyone engaging in the business or acting in the capacity of a contractor,[3] or submitting a bid on a project, must be licensed unless they are exempt from licensure. NRS 624.700(1). And, relevant to the specific issues presented here, an electrical license is required for the "installation, alteration and repair of systems that use fiber optics or do not exceed 91 volts, including telephone systems, sound systems, cable television systems, closed circuit video systems, satellite dish antennas, instrumentation and temperature controls, computer networking systems and landscape lighting." NAC 624.200(2)(d).

Thus, if IHS performed any of the work described in NAC 624.200(2)(d) on Tom's residence, it needed an electrical license in order to bid on and perform the work. *See* NRS 624.700(1)(b) (bidding); NRS 624.700(1)(a) (performing). But an exemption to the licensure requirement exists when the project is limited to the "sale or installation of any finished product . . . which is not fabricated into and does not become a permanent fixed part of the structure." NRS 624.031(6).

---

[3]A contractor is anyone who, "acting solely in a professional capacity, . . . submits a bid to, or does himself[,] . . . construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building." NRS 624.020(2).

With this background information in mind, we now turn to Tom's challenges to the district court's grant of summary judgment to IHS and award of attorney fees in favor of IHS. We first examine the district court's summary judgment decision, beginning with the determination that IHS was not required to possess an electrical license in order to bid on or perform work on Tom's residence. We will then determine the propriety of the court's grant of summary judgment on IHS's breach of contract claim. We conclude our review of the issues presented by examining the award of attorney fees to IHS.

*Licensure*

To resolve the licensing issue, the district court relied on the Board's resolution of Tom's complaint, which the court found determinative of whether IHS needed a license for the work it performed on Tom's residence, thus giving that resolution preclusive effect. The district court further concluded that the advisory opinions provided by IHS also demonstrated that IHS did not need a license for the work it performed. Tom asserts that the district court erred in its reliance on these documents, but IHS counters that such reliance was proper because the documents demonstrated that IHS was not required to have a license, making the grant of summary judgment in its favor on that issue appropriate.

We begin our examination of these issues by considering whether the district court properly concluded that the Board's resolution of Tom's administrative complaint was dispositive evidence that IHS did not need a license for the work performed on Tom's residence. Thereafter, we turn to the district court's reliance on the advisory opinions issued by the Board as further demonstrating that IHS did not need a license.

 

Summary judgment is appropriate "when the pleadings and other evidence on file demonstrate" that no genuine issues of material fact remain "and that the moving party is entitled to a judgment as a matter of law." *Wood*, 121 Nev. at 729, 121 P.3d at 1029 (internal quotation marks omitted). In reviewing a motion for summary judgment, "the evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party." *Id.* "The party moving for summary judgment bears the initial burden of production to show the absence of a genuine issue of material fact." *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 602, 172 P.3d 131, 134 (2007). Only if the moving party meets its burden of production does the burden shift to the opposing party "to show the existence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting) (rejecting the majority's application of the summary judgment rule to the facts at hand, but not its explanation of the rule)).

*The district court's reliance on the Board's decision*

In concluding that a license was not required for the work IHS performed on Tom's residence, the district court relied heavily on the Board's decision to close Tom's complaint without ordering IHS to cease all work under the contract. Specifically, the district court noted that NRS 624.212 required the Board to take such action if a license was required, and that its failure to do so indicated that the Board had "necessarily found that a license was not necessary for the work performed by IHS." While not stated in these exact terms, the district court essentially held that the Board's decision was entitled to preclusive effect on the question of whether a license was required so as to bar Tom from relitigating that issue. Tom argues that because there was no final decision resulting from

COURT OF APPEALS
OF
NEVADA

(O) 1947B

a contested case on the license issue, the district court should not have viewed the Board's actions as determinative of the licensing issue, while IHS contends the district court did not err by doing so. We start our discussion of this issue by analyzing issue and claim preclusion and how those legal principles apply in the administrative context.

"Claim and issue preclusion can apply in the administrative context '[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate.'" *Holt v. Reg'l Tr. Servs. Corp.*, 127 Nev. 886, 891, 266 P.3d 602, 605 (2011) (alteration in original) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)); *see also Britton v. City of N. Las Vegas*, 106 Nev. 690, 692, 799 P.2d 568, 569 (1990) ("It is a well-settled rule of law that res judicata may apply to administrative proceedings."). Thus, "[a]n agency decision can result in issue or claim preclusion as to a subsequent decision made by another court or a different agency." *Redrock Valley Ranch, LLC v. Washoe Cty.*, 127 Nev. 451, 459, 254 P.3d 641, 646 (2011).

In order for either doctrine to apply to bar the relitigation of a claim or issue, all the elements of the particular doctrine must be met. For claim preclusion to apply, (1) the same parties or their privies must be involved in both cases, (2) a valid final judgment must be entered in the first case, and (3) the subsequent action must be "based on the same claims or any part of them that were or could have been brought in the first case." *Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 130 Nev. ___, ___, 321 P.3d 912, 915 (2014) (internal quotation marks omitted). Similarly, for issue preclusion to apply,

(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; ... (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue [must have been] actually and necessarily litigated.

*Id.* at ___, 321 P.3d at 916 (first alteration in original) (internal quotation marks omitted).

Having laid out the elements for both claim and issue preclusion, we must now determine if the Board's resolution of Tom's administrative complaint met these elements such that it barred Tom from relitigating the licensing issue in the district court. To do so, we must first examine the Board's statutory powers and its role in resolving the complaints and issues presented to it before addressing the specific Board decision at issue here.

*The Board*

The Board consists of seven members, NRS 624.040, and is an administrative agency within the meaning of the Administrative Procedure Act (APA). Thus, it must comply with the Act's provisions. *See* NRS 233B.031 (defining an agency as "an agency, bureau, board, commission, department, division, officer or employee of the Executive Department of the State Government authorized by law to make regulations or to determine contested cases"); NRS 624.100(1) (authorizing the Board to make reasonable regulations necessary to carry out the provisions of NRS Chapter 624); NRS 233B.039 (listing those agencies that are exempted from the requirements of the APA and not including the Nevada State Contractors' Board amongst the exempted agencies). Additionally, the Board's enforcement actions are authorized by Chapter

624 of the Nevada Revised Statutes, *see* NRS 624.040-.212, the chapter which also governs contractors' licenses. *See* NRS 624.240-.288. As directed by statute, the Board designates one or more of its employees to investigate any form of construction fraud, NRS 624.165(1)(a), which in this case, is defined as "a person engaged in construction knowingly . . . [acting] as a contractor without . . . [p]ossessing a contractor's license." NRS 624.165(3)(e)(1).

In that vein, after the Board receives a written complaint, it must "investigate the actions of any person acting in the capacity of a contractor, with or without a license." NRS 624.160(4). If the Board's investigation reveals that the contractor submitted a bid on a project or performed work without the proper license, the Board must issue a cease-and-desist order to stop the unlicensed work. NRS 624.212(1).

Further, "[t]he Board is vested with all of the functions and duties relating to the administration of [NRS Chapter 624]." NRS 624.160(1). This includes adjudicating contested cases. *See* NRS 233B.121; *see also* NRS 624.170(2)(c) (permitting the Board to "[i]ssue subpoenas for the attendance of witnesses and the production of records, books and papers in connection with any hearing, investigation or other proceeding of Board"); NRS 624.510(8)[4] (providing that the Board may award attorney fees incurred in contested cases under certain circumstances). A contested case is defined as a proceeding "in which the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing, or in which an

---

[4]This statute has since been amended, but the relied-upon subsection was not altered. *See* 2015 Nev. Stat., ch. 359, § 6, at 2010.

administrative penalty may be imposed." NRS 233B.032. Parties to contested cases have statutory rights to: (1) receive notice of the proceeding; (2) be represented by counsel; and (3) respond to and present evidence. NRS 233B.121(1)-(4).

Related to its investigative duties and ability to resolve contested cases, the Board can also make findings of fact regarding the issues presented to it. NRS 233B.125; *see also Dickinson v. Am. Med. Response*, 124 Nev. 460, 469, 186 P.3d 878, 884 (2008) (stating that the agency's factual findings are "crucial to the administrative process"). Indeed, when resolving contested cases resulting in a final decision, NRS 233B.125 requires the Board to "include findings of fact and conclusions of law, separately stated," either on the record or in writing. *But see* NRS 233B.121(5) (stating that an administrative agency may make an informal disposition in certain circumstances and if it does, "the parties may waive the requirement for findings of fact and conclusions of law").

*The Board's decision on Tom's administrative complaint*

With regard to the agency decision relied on by the district court in granting IHS's motion for summary judgment, the Board conducted an investigation on Tom's complaint and issued a notice to correct to IHS. Although the notice to correct stated IHS's failure to comply could result in a fine, it cited NAC 624.700(3), which permits the Board to take action after an investigation, as opposed to after a proceeding in a contested case. Additionally, that regulation does not allow for the imposition of a fine itself, but rather allows the Board to require the contractor to show cause why disciplinary action, which could include a fine, should not be issued, demonstrating that further procedures are required before such discipline is imposed. *See* NAC 624.700(3)(c). Thus, the notice from the investigator in this case directing

COURT OF APPEALS
OF
NEVADA

(O) 1947B

IHS to make certain repairs did not determine the legal rights, duties, or privileges of either party. *See* NRS 233B.032. The Board's letter closing the complaint similarly did not attempt to determine the rights, duties, or privileges of either party; instead, the letter simply stated that the issues identified in Tom's complaint appeared to have been resolved. *See id.*

Furthermore, the investigator's act of issuing a letter directing IHS to respond to the complaint falls far short of compliance with the notice and hearing requirements mandated in NRS 233B.121 for contested cases. There was no notice of a hearing sent to the parties, no ability for Tom to present evidence or witnesses in response to IHS's letter,[5] and no administrative record that complied with the statute. *See* NRS 233B.121(2), (4), (7); *see also Private Investigator's Licensing Bd. v. Atherley*, 98 Nev. 514, 515, 654 P.2d 1019, 1020 (1982) (concluding that when a proceeding relating to the licensing process does not require notice and an opportunity for a hearing, it does not constitute a contested case under the APA).

Finally, the Board did not issue findings of fact and conclusions of law pursuant to NRS 233B.125. And neither party argues, and the record does not support, that the circumstances required in NRS 233B.121(5) were met, allowing the Board to issue an informal disposition. Thus, we conclude, as argued by Tom, that the Board's decision cannot be characterized as a final decision resolving a contested case.

---

[5]Although IHS submitted documentation to support the assertions raised in its response letter to the Board, it is unclear whether Tom submitted additional documentation with the complaint or in response to IHS's letter.

Having determined that there was no actual litigation and no final decision made on the merits of the case by the Board, we conclude that no preclusive effect could be given to the Board's decision on Tom's complaint.[6] *See Alcantara*, 130 Nev. at ___, 321 P.3d at 915-16; *see also Britton*, 106 Nev. at 693, 799 P.2d at 569-70 (stating that an administrative decision can have a preclusive effect on a future case only if it resulted in a final judgment on the merits). And it follows that, because the Board's decision was not entitled to preclusive effect on the issues presented to the district court, the district court erred in granting summary judgment in favor of IHS on this basis.[7] We now turn to the

---

[6]IHS argues, and the district court concluded, that Tom had to seek judicial review pursuant to NRS Chapter 233B because the Board's actions constituted a final decision. IHS therefore maintains that this court should defer to the Board's decision and that this is not a preclusion issue. Because we have already concluded that the Board's decision did not constitute a final decision resulting from a contested case, and because this case is not an appeal from a petition for judicial review of an agency decision, deference to the agency is not appropriate. *See* NRS 233B.135(2)-(3) (providing that, in the judicial review process, the burden of proof is on the party challenging the agency decision and that the district court should not substitute its judgment for that of the agency on questions of fact).

[7]IHS also argues that summary judgment is supported because, pursuant to its complaint form, the Board may not request an unlicensed contractor to complete work, but here, the Board requested IHS to address nine of Tom's complaint items. IHS further argues that summary judgment is supported by the Board's failure to order IHS to cease work on Tom's residence. Because we conclude that the Board's action of closing Tom's complaint should not have been given preclusive effect, we also conclude that neither the Board's actions in ordering IHS to address nine of the complaint items nor the Board's failure to order IHS to cease work on Tom's residence should be given preclusive effect because the elements

*continued on next page...*

other basis for the district court's grant of summary judgment—the Board's advisory opinions.

*The district court's reliance on advisory opinions addressing other matters*

The district court explicitly relied on three advisory opinions,[8] which did not directly involve Tom or IHS but discussed work arguably resembling the work IHS performed on Tom's residence, as providing a legal basis for granting summary judgment on the licensing issue. Tom argues that the district court clearly erred in relying on the advisory opinions because of the disclaimer contained in each opinion limiting them to the specific facts and circumstances provided to the Board, a point which IHS concedes on appeal. IHS counters, however, that reliance on these advisory opinions was still proper because they are in accord with other jurisdictions dealing with the same issue and that the opinions also provide insight into whether a license was needed for the work IHS performed.

---

*...continued*

for claim and issue preclusion have not been met. *See Alcantara*, 130 Nev. at ___, 321 P.3d at 915-16; *Britton*, 106 Nev. at 693, 799 P.2d at 569-70.

[8]The APA mandates that each administrative agency provide for the issuance of advisory opinions regarding "the applicability of any statutory provision, agency regulation or decision of the agency." NRS 233B.120. The Board may provide advisory opinions, NRS 624.160(3), to any person who files a petition regarding "the applicability of any provision of Chapter 624 of NRS." NAC 624.120. Although NRS 233B.120 states that declaratory orders disposing of petitions have the same status as agency decisions, it is silent as to the legal effect of advisory opinions. NRS 233B.038(2)(f), however, provides that an advisory opinion that is not of general applicability is not enforceable as a regulation. *But see* NRS 233B.038(1)(a) (providing that an agency's statement of general applicability interpreting a statute is enforceable as a regulation).

We disagree with IHS's position. First, all three opinions contain disclaimers that limit their use. Two of the three advisory opinions state:

> The foregoing opinion applies only to the specific facts and circumstances defined herein. Facts and circumstances that differ from those in this opinion may result in an opinion contrary to this opinion. No inferences regarding the provisions of [the NRS] quoted and discussed in this opinion may be drawn to apply generally to any other facts and circumstances.

Therefore, in addition to the parties' concessions on appeal that the opinions' applications are limited to their facts, the opinions themselves caution against applying inferences to factually dissimilar circumstances.

Moreover, IHS's reliance on *Walker v. Thornsberry*, 158 Cal. Rptr. 862 (Ct. App. 1979), is unavailing. While the *Walker* court did decide a licensure issue similar to the one at issue here, the fact that that court concluded that a license was not required for the installation of a prefabricated bathroom, *see id.* at 865, is not a reason to conclude that the advisory opinions in this case are instructive because *Walker* does not resolve the deficiencies present in the advisory opinions relied upon by IHS. The first deficiency, addressed above, is that the opinions are limited to their facts. The second deficiency, discussed in more detail below, is that the work discussed in those opinions was dissimilar to the work performed by IHS.

Below, the district court gave the advisory opinions persuasive effect because it found that the advisory opinions were factually similar to IHS's work; therefore, it concluded that IHS did not need a license for the

work performed on Tom's residence.[9] We disagree with the district court's interpretations and conclude that the advisory opinions are not persuasive.

---

[9]The substance of the advisory opinions consists merely of a question and an answer. The first opinion states:

> ISSUE: Would a Nevada State [Contractor's] license be required to install a new phone system for the Carson City School System utilizing existing cabling infrastructure?
>
> ADVISORY OPINION: Based upon the information provided, the Board opined that a [Contractor's] license would not be required to set components in place and plug the equipment into existing outlets. A C-2 (Electrical) or a C-2(e) Signal Systems classification would be required if any electrical work is performed.

The second opinion states:

> ISSUE: Would a Nevada State [Contractor's] license be required to install component communication equipment into metal cabinets in police dispatch rooms.
>
> ADVISORY OPINION: Based upon the information provided, a [Contractor's] license would not be required to set components in place and plug the equipment into existing outlets. A C-2 (Electrical) or a C-2(e) Signal Systems classification would be required if any electrical work is performed.

The third opinion states:

> ISSUE: Is a [Contractor's] license required to perform the installation of pet containment systems that consist of low-voltage wiring that is plugged into a lightning protector and then into a grounded outlet?

*continued on next page...*

 

First, in reviewing the questions addressed in the advisory opinions, it is clear that all three are factually dissimilar to the case at bar. One opinion answers whether a license would be necessary to install a new phone system utilizing an existing cabling infrastructure. Another opinion answers whether a license would be required to install component communication equipment into metal cabinets. And the last opinion answers whether a license would be required to install a pet containment system consisting of plugging low-voltage wiring into a lightning protector. Thus, the opinions do not appear to be sufficiently similar to the case at bar to be persuasive because none of them discuss whether a contractor's license is required to install automation, sound, surveillance, and landscaping systems like the systems IHS installed at Tom's residence. *See generally Univ. & Cmty. Coll. Sys. of Nev. v. DR Partners*, 117 Nev. 195, 203-04, 18 P.3d 1042, 1047-48 (2001) (stating that nonbinding opinions of the attorney general that do not support the assertion for which they are presented are not persuasive).

Second, the opinions are very brief, each consisting only of a one-sentence statement of the issue and one or two sentences for the opinion. There is not a section for a description of the facts, only a few words within the issue statement. Even if the type of work in the advisory opinions was factually similar to some of the work IHS performed, the advisory opinions could not cover the entire scope of work contemplated by

---

*...continued*

> ADVISORY OPINION: Based upon the information provided, the Board opined that a [Contractor's] license would not be required to perform the installation of the PetSafe pet containment systems.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

the contract with IHS—installation of automation, sound, surveillance, and landscaping systems. Further, two of these opinions, wherein the Board opined that the work described did not require an electrical license, included a statement of the general principle that "[an electrical license] *would be required if any electrical work* is performed" (emphasis added), an issue that was not explored by the district court. Thus, the advisory opinions lack the factual detail necessary for the opinions to be used as persuasive authority. *But see Pyramid Lake Paiute Tribe of Indians v. Washoe Cty.*, 112 Nev. 743, 748, 918 P.2d 697, 700 (1996) (providing that an agency's interpretation of a statute is not controlling, but can be persuasive).

In sum, we conclude that the district court erred in treating the Board's letter closing Tom's complaint as dispositive of the license issue. We further conclude that the advisory opinions do not support granting IHS summary judgment on that issue. Thus, when viewing all of this evidence in the light most favorable to Tom, we conclude that IHS failed to meet its initial burden of production to show the absence of a genuine issue of material fact regarding whether it needed a license. *See Cuzze,* 123 Nev. at 602, 172 P.3d at 134. Additionally, the contract itself, and its multiple revisions, when construed in a light most favorable to Tom, are also sufficient to create a genuine issue of material fact regarding whether a license was needed. *See id.* Therefore, we reverse the district court's grant of summary judgment on the lien claim, as that decision was premised on the conclusion that IHS did not need a license

for the work it performed on Tom's residence.[10] We next address whether summary judgment was proper on IHS's breach of contract claim.

*Breach of contract*

IHS's breach of contract claim is based on its assertion that it completed its contractual obligations, but Tom did not make a final payment. Tom argues that IHS never completed the work on his residence; therefore, final payment was not required. To support his assertion, Tom filed an affidavit describing the unfinished work, which included issues with the equipment rack ventilation system, the sprinkler system, the sidelight window switchable smart tint, and a failure to honor a warranty and provide wiring diagrams to some of the systems as promised.

IHS, on the other hand, relies on the closure of Tom's Board complaint to support its assertion that it finished all contractual obligations in a workmanlike manner. It further states that had it not completed the work in question, Tom would have filed another complaint with the Board and since no such complaint was filed, IHS maintains that it satisfied its contractual obligations. In its order, the district court found that IHS had resolved the items that the Board directed it to correct before closing Tom's complaint, that there was no evidence that Tom "insisted that additional problems remained after IHS complied with the

---

[10]IHS also argues on appeal that, pursuant to NRS 47.250(16), this court should apply a disputable presumption that the Board followed the law in this case. IHS waived this argument, however, because it was not raised in the district court, and we therefore decline to consider it. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court . . . is deemed to have been waived and will not be considered on appeal.").

[Board's] correction directive," and that Tom's affidavit failed to create a genuine issue of material fact that IHS had not completed its portion of the contract.

Looking at IHS's evidence on the contract claim, we conclude that it has not met its burden of proving that no genuine issue of material fact exists regarding whether the contract was completed. *See id.* First, while the Board's letter stated it was closing the complaint because it appeared that the issues raised therein were resolved, it does not state that IHS fully completed its obligations under the contract. And, although Tom certainly could have filed a second complaint with the Board regarding any remaining issues, he was under no obligation to do so as he also had the right to pursue those claims in court. Thus, the closing of Tom's Board complaint is not dispositive evidence that IHS completed the contract.

Additionally, when viewing the competing affidavits from IHS and Tom, and the additional evidence, in a light most favorable to Tom, it is apparent that genuine issues of material fact remain regarding whether IHS satisfied all of its obligations under the contract such that Tom would be required to pay IHS in full.[11] Thus, summary judgment on this issue was improper as well. *See id.* Therefore, regarding the district court's

---

[11]For example, IHS's affidavit stated that it included an item on a revised contract, at Tom's request, that was actually supposed to be completed by another contractor and thus, was not IHS's responsibility. Tom's affidavit, however, asserts that IHS was to complete that item and failed to do so. Tom's statement, plus the contract from IHS including the disputed item, creates a genuine issue of material fact as to whether IHS completed its obligations under the contract. *See Cuzze,* 123 Nev. at 602, 172 P.3d at 134.

grant of summary judgment, there remain genuine issues of fact as to whether IHS needed a contractor's license and whether Tom breached his contractual obligations. Because these disputed facts are material to the success of the mechanic's lien and breach of contract claims, summary judgment was inappropriate in this case and we reverse that decision.[12] *See id.*

*Attorney fees*

After granting summary judgment in favor of IHS, the district court also awarded attorney fees to IHS. On appeal, Tom raises three separate challenges to this award. First, Tom argues that the district court improperly awarded attorney fees under NRS 18.010(2)(b) because there were reasonable grounds for Tom's claims and his defenses were not raised to harass IHS. Second, Tom maintains that the district court improperly awarded attorney fees under NRS 108.237 because a portion of the award requested was incurred during the administrative process and outside of court proceedings.[13] Third, Tom claims that the district court

---

[12]Because we conclude that genuine issues of material fact remain pending below such that summary judgment was inappropriate, we need not address Tom's additional argument that the district court abused its discretion in denying his NRCP 56(f) motion for a continuance to obtain discovery in order to oppose the motion. We do note, however, that discovery had not even commenced in this case when the district court granted summary judgment.

[13]The district court did not identify if it was awarding attorney fees associated only with IHS's complaint before the district court, or if it was also awarding attorney fees IHS incurred in defending the action brought by Tom before the Board, as was requested by IHS in its fees motion. While we need not rule on this issue at this juncture, we urge the district court to be aware of this distinction if the parties request an award of attorney fees under NRS 108.237(1) during the proceedings on remand.

abused its discretion by not making any findings regarding the *Brunzell* factors.[14]    Because of our conclusion that summary judgment was inappropriate in this case, the award of attorney fees is necessarily vacated; therefore, we do not address this issue.

## CONCLUSION

Because genuine issues of material fact remain as to whether IHS needed a license to perform certain work under the contract and whether IHS completed the contract, we reverse the district court's order granting summary judgment in IHS's favor. Accordingly, we also vacate the award of attorney fees and remand this case to the district court for further proceedings consistent with this opinion.

_____, C.J.
Gibbons

I concur:

_____, J.
Silver

---

[14]Although we conclude that an award of attorney fees is premature at this time, we note that the district court failed to analyze the *Brunzell* factors in its award. *See Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969) (identifying factors a district court must consider when making an award of attorney fees); *see also Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 865, 124 P.3d 530, 549 (2005) (providing that an award of attorney fees will be deemed reasonable "as long as the court provides sufficient reasoning and findings in support of its ultimate determination").

TAO, J., concurring:

I join wholeheartedly in every aspect of the majority's very thorough and well-reasoned opinion, but write separately to address a matter that, historically, the Nevada Supreme Court has not explained as clearly as it perhaps should have. The Nevada Supreme Court has held that advisory opinions issued by executive-branch boards can be deemed "persuasive." Following this principle, the majority concludes that the advisory opinions cited by respondent are not sufficiently persuasive to govern the outcome of this appeal. I fully agree with the majority's conclusion, but my concern is that the Nevada Supreme Court has not always given clear guidance regarding whether, when, and why courts should follow such advisory opinions.

Used imprecisely, words can obscure as much as they explain. We say that a judicial opinion can be "persuasive," and we say that an executive-branch board advisory opinion can be "persuasive." In both instances, we use the same word—but we really mean two very different things. If one were to read the supreme court's precedent too loosely, one might come away thinking that we apply the same thought process in both contexts when we not only do not, but cannot.

When we read judicial opinions with an eye toward deciding whether to follow them or not, we are exploring the reasoning of other judges who are similarly situated to us, have similar powers and limits, and who are allowed to consider the same things as we could have considered under the rules of evidence, procedure, jurisdiction (both personal and subject matter), standing, mootness, ripeness, waiver and preservation of issues, and all of the other established doctrines of justiciability that govern what courts do and how they do it. A judicial opinion is an expression of how a judge understood a principle of law and

applied it to a set of judicially admissible facts. We consider a judicial opinion to be persuasive, meaning worth extending and applying to other cases with different facts, when it accords with our own sense of what the law means and how we would have likely addressed the same question under the same rules and constraints when faced with a comparable set of facts admitted into evidence.

But executive-board advisory opinions are nothing like judicial opinions. Executive boards do not operate under the same rules of evidence or procedure that courts do, they are not constrained by the same jurisdictional and constitutional constraints that courts are, and they may consider things that would never be admitted as evidence in a court of law. In disciplinary matters, the board is simultaneously the prosecutor who decides to bring the action, the judge of how the hearing will be conducted and what evidence will be considered, and the jury who decides the truth of the charge. The very fact that boards can issue "advisory" opinions at all—unbound by judicial considerations of ripeness, mootness, standing, or justiciability—symbolizes one fundamental difference between the operation of a board and the operation of a court.

Courts give deference to executive boards, but not because they act like courts; in many ways boards could not operate less like courts, and we need to be careful when applying judicial doctrines like collateral estoppel, res judicata, and "law of the case" to board actions in the same way that we apply them to judicial decisions. Rather, courts give deference to executive boards because they have subject-matter expertise that judges do not. Boards are essentially panels of experts licensed in the field and appointed to regulate the standards of their own profession. Unlike courts run by generalist judges whose principal (or only) training is

in the law, Nevada boards are purposefully structured to include nonlawyer members who lack legal training but who have personal familiarity with the area over which the board exercises jurisdiction, whether the subject matter relates to contractor licensing, osteopathic practices, the qualifications of massage therapists, or any of the other myriad subject areas and professions licensed and supervised by state executive boards in Nevada. By virtue of their experience, board members know things about the subject matter that judges likely will not know and that could never be admitted into evidence in a court governed by rules of evidence. Even board members who have law degrees will likely know more than most judges do about board licensing and discipline, because a court like ours confronts a licensing question perhaps once in a blue moon, if that; but the very purpose of a board is to grapple with the same questions over and over, frequently in disputes that would never reach a court.

So, when we say that an advisory opinion issued by a board is, or is not, persuasive, we should not mean that we have reviewed the board's reasoning and picked apart its written opinion in the same manner as we would a judicial opinion, focusing on the clarity of its internal logic or the fairness of its ultimate outcome. Instead, what we should mean is something very different: that the board has, or has not, brought its superior subject-matter expertise to bear on the question at hand in a way that enlightens us and helps us resolve the case before us.

In this particular case, this distinction makes no difference because the advisory opinions relied upon here are not persuasive in either sense of the term; they are so narrowly drafted that they are not guideposts to much of anything useful in this case. But that will not

Court of Appeals
of
Nevada

(O) 1947B

3

always be true, and there likely will be cases in which thinking about the board's opinion as an example of legal reasoning, and thinking about it instead as an exercise in subject-matter expertise, may lead to very different views on whether we should give weight to what the board thought or did. To the extent that our role includes providing guidance to the public on how questions like this will be analyzed and resolved, we should be clear on precisely what we are saying or else we risk confusing the issue more than clarifying it, even on questions like this one where the potential confusion originates with the words used by the Nevada Supreme Court.

_____, J.
Tao